## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TRIDINETWORKS LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-1062-CFC-CJB |
| | ) | |
| NXP USA, INC. and NXP B.V., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Presently before the Court in this patent infringement case is Defendant NXP B.V.'s ("Defendant" or "NXP B.V.") Motion to Dismiss First Amended Complaint, (D.I. 15) (the "Motion"). In the Motion, Defendant asks the Court to dismiss the operative First Amended Complaint pursuant to: (1) Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and (2) Federal Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (*Id.*) For the reasons set forth below, the Court recommends that Defendant's Motion be GRANTED on personal jurisdiction grounds, such that the Court need not address the Motion's Rule 12(b)(6) arguments.

**I.    BACKGROUND**

    **A.    Factual Background**

Plaintiff TriDiNetworks Ltd. ("Plaintiff") is a corporation organized under the laws of Israel with its principal place of business located in that country. (D.I. 7 at ¶ 1) Plaintiff is the assignee of the patent-in-suit, United States Patent No. 8,437,276 (the "'276 patent"). (*Id.* at ¶ 10)

Defendant NXP B.V. is a corporation organized under the laws of the Netherlands with

its principal place of business there.  (*Id.* at ¶ 3)  Defendant NXP USA, Inc. ("NXP USA," and collectively with NXP B.V., "Defendants") is a corporation incorporated in Delaware with its principal place of business in California.  (*Id.* at ¶ 2)

The relationship between the foreign and domestic Defendant entities is set forth in the declaration of Timothy Shelhamer, the Assistant Secretary of NXP USA, which was filed in support of the Motion (the "Shelhamer Declaration").  (D.I. 17)  At the top of the organization is non-party NXP Semiconductors N.V. ("NXP N.V."), which is a Dutch company headquartered in the Netherlands.  (*Id.* at ¶ 3).  NXP B.V. is a wholly-owned subsidiary of NXP N.V.  (*Id.*)  NXP B.V., in turn, wholly owns its subsidiary Freescale Semiconductor Holdings V, which in turn wholly owns NXP USA.  (*Id.* at ¶ 5)

According to the Shelhamer Declaration, NXP B.V. is effectively a holding corporation.  It does not direct "manufacturing, marketing and/or sales of any product into any geographic area."  (*Id.* at ¶ 3)  Rather, it merely "has an ownership interest, either directly or indirectly" in various other worldwide NXP entities who have "the responsibility and capacity for manufacturing, marketing and/or selling products."  (*Id.*)  NXP B.V. owns a website, nxp.com.  (*Id.*; D.I. 18, ex. 1 at ¶ 6)  Further relevant facts related to resolution of the Motion will be set out as needed in Section III.

### B. Procedural Background

Plaintiff filed this case on June 7, 2019,[1] (D.I. 1), and filed its operative First Amended Complaint on July 17, 2019, (D.I. 7).  Defendant filed its Motion on October 18, 2019, (D.I.

---

[1]  On that same date, Plaintiff filed two other actions in this Court in which it asserts the '276 patent:  *TriDiNetworks Ltd. v. Signify North America Corp. et al.*, Civil Action No. 19-1063-CFC-CJB and *TriDiNetworks Ltd. v. STMicroelectronics International N.V.*, Civil Action No. 19-1064-CFC-CJB.

15);[2] briefing was completed on November 8, 2019, (D.I. 21). The Court has been referred this case for all purposes up through expert discovery, except for the *Markman* hearing. (D.I. 10; D.I. 40)

## II. STANDARD OF REVIEW

Rule 12(b)(2) requires the Court to dismiss any case in which it lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2); *Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 263 F. Supp. 3d 498, 502 (D. Del. 2017). When a defendant moves to dismiss a lawsuit for lack of personal jurisdiction, the plaintiff bears the burden of showing the basis for jurisdiction; in a situation like this, where no evidentiary hearing has been held, the plaintiff must only make a *prima facie* showing that personal jurisdiction exists. *See Nespresso*, 263 F. Supp. 3d at 502; *Hardwire, LLC v. Zero Int'l, Inc.*, Civil Action No. 14-54-LPS-CJB, 2014 WL 5144610, at *5 (D. Del. Oct. 14, 2014) (citing cases); *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 369 (D. Del. 2008). To make out this *prima facie* showing, the plaintiff must "'establish[] with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (citations omitted); *see also bioMérieux, S.A. v. Hologic, Inc.*, C.A. No. 18-21-LPS, 2018 WL 4647483, at *2 (D. Del. Sept. 26, 2018). In reviewing a motion to dismiss for lack of personal jurisdiction, the Court may consider the pleadings, affidavits, declarations and exhibits, and must construe all disputed facts in the plaintiff's favor. *Round Rock Research LLC v. ASUSTeK Comput. Inc.*, 967 F. Supp. 2d 969, 972 (D. Del. 2013); *Power Integrations*, 547 F. Supp. 2d at 369; *see also Hardwire*, 2014 WL 5144610, at *5.

---

[2] Also pending in this case is NXP USA's Motion to Dismiss First Amended Complaint, in which it argues for dismissal pursuant to Rule 12(b)(6). (D.I. 13; *see also* D.I. 14) The Court will address this motion in a forthcoming Report and Recommendation.

The Supreme Court of the United States has recognized two classifications of personal jurisdiction: "general jurisdiction" and "specific jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks and citations omitted). The Supreme Court distinguished between these concepts in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), which remains the "'canonical opinion'" in the area of personal jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (citation omitted). "Specific jurisdiction" encompasses causes of action that "'aris[e] out of or relate[] to the defendant's contacts with the forum.'" *Goodyear*, 564 U.S. at 923-24 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). "General jurisdiction" encompasses complaints arising from dealings that are distinct from the defendant's activities in the state. *Id.* at 924 (citing *Int'l Shoe*, 326 U.S. at 318); *see also Daimler*, 571 U.S. at 127. A court may exercise "'general jurisdiction over foreign (sister-state or foreign-country) corporations'" only when the corporation's "'affiliations with the State [in which suit is brought] are so continuous and systematic as to render [it] essentially at home in the forum State.'" *Daimler*, 571 U.S. at 127 (certain internal quotation marks and citations omitted).

In order to establish personal jurisdiction, a plaintiff must adduce facts sufficient to satisfy two requirements—one statutory and one constitutional. *Hardwire*, 2014 WL 5144610, at *6. In the typical analysis of the statutory prong, courts consider whether the defendant's actions fall within the scope of a state's long-arm statute. *Id*. at *6; *Power Integrations*, 547 F. Supp. 2d at 369. In analyzing the constitutional prong, courts determine whether the exercise of jurisdiction comports with the defendant's right to due process. *Hardwire*, 2014 WL 5144610, at *6; *Power Integrations*, 547 F. Supp. 2d at 369 (citing *Int'l Shoe*, 326 U.S. at 316). Due process is satisfied if the Court finds the existence of "'minimum contacts' between the non-resident

4

defendant and the forum state, 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Power Integrations*, 547 F. Supp. 2d at 369 (quoting *Int'l Shoe.*, 326 U.S. at 316).

However, certain disputes over personal jurisdiction implicate Federal Rule of Civil Procedure 4(k)(2), which "serves as a federal long-arm statute[.]" *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018) (internal quotation marks and citation omitted). Rule 4(k)(2) allows "'a court to exercise personal jurisdiction over a defendant if (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process.'" *Id.* (quoting *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1293-94 (Fed. Cir. 2009)). "'The third requirement under Rule 4(k)(2)—the due process analysis—contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits.'" *Id.* (quoting *Synthes*, 563 F.3d at 1295). Rule 4(k)(2) was enacted by the 1993 amendments to the Federal Rules of Civil Procedure in order to "close[] a loophole" that existed when a foreign defendant had sufficient contacts with the United States to justify the exercise of jurisdiction, but lacked sufficient contacts with any single state to satisfy a state long-arm statute or the due process constraints of the Fourteenth Amendment. *Synthes*, 563 F.3d at 1295-96. The Rule is thus meant to allow a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not with the forum state, satisfy due process. *M-I Drilling*, 890 F.3d at 999.

In assessing a personal jurisdiction question in a patent case, authority from the United States Court of Appeals for the Federal Circuit is controlling. *See Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008); *Boston Sci. Corp. v. Wall Cardiovascular*

5

*Techs., LLC*, 647 F. Supp. 2d 358, 364 (D. Del. 2009).  With regard to the typical way in which the statutory prong is analyzed (i.e., by looking to a state's long-arm statute), the Federal Circuit defers to the law of the relevant state courts and federal courts; thereafter, in assessing the constitutional prong, the Federal Circuit follows its own law.  *Round Rock Research*, 967 F. Supp. 2d at 973; *Graphics Props. Holdings Inc. v. ASUS Comput. Int'l, Inc.*, 964 F. Supp. 2d 320, 324 (D. Del. 2013).  If Rule 4(k)(2) is applicable, the Federal Circuit applies its own law to the entirety of the analysis.  *Synthes*, 563 F.3d at 1293.

**III.   DISCUSSION**

The Court understands Plaintiff's principal argument for personal jurisdiction to be premised on Rule 4(k)(2).[3]  (D.I. 18 at 11-12, 16)  As was set out above in Section II, there are three prongs to the Rule 4(k)(2) analysis.  The parties do not dispute that the first prong (which asks whether the plaintiff's claim arises under federal law) is met here, where Plaintiff asserts a cause of action for patent infringement.  (*See* D.I. 18 at 12; D.I. 21 at 6)  As for the second prong, NXP B.V. has confirmed that it "does not contend that it is subject to personal jurisdiction in the courts of any state." (D.I. 21 at 6 n.3)  *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294

---

[3]   Plaintiff also briefly argues that Defendant is subject to personal jurisdiction by virtue of Delaware's state long-arm statute.  (D.I. 18 at 11)  The Court can dispose of this argument quickly.  The only provision of the Delaware long-arm statute cited in support by Plaintiff—Section 3104(c)(4)—provides for jurisdiction over "any nonresident . . . who . . . [c]auses tortious injury in the State by an act or omission outside the State if the person . . . derives substantial revenue from services, or things used or consumed in the State[.]"  10 Del. C. § 3104(c)(4) (cited in D.I. 18 at 11).  Section 3104(c)(4) confers general personal jurisdiction, not specific personal jurisdiction.  *See Power Integrations*, 547 F. Supp. 2d at 370 (citing cases).  Yet nowhere does Plaintiff explain how NXP B.V.'s contacts in Delaware could possibly be said to be so "continuous and systematic as to render [it] *essentially at home* in the [] State." *Daimler*, 571 U.S. at 127 (emphasis added) (internal quotation marks and citation omitted); *see also AstraZeneca AB v. Mylan Pharm., Inc.*, 72 F. Supp. 3d 549, 554 (D. Del. 2014), *aff'd sub nom. Acorda Therapeutics Inc. v. Mylan Pharms. Inc.*, 817 F.3d 755 (Fed. Cir. 2016).  Accordingly, the Court will reject this argument.

(Fed. Cir. 2012). Thus, the parties' dispute comes down to whether the third prong of the Rule 4(k)(2) analysis is met. (D.I. 21 at 6)

This third prong analyzes a foreign defendant's contacts with the United States at large, and whether the exercise of jurisdiction comports with due process. *Boston Sci. Corp. v. Micro-Tech Endoscopy USA Inc.*, Civil Action No. 18-1869-CFC-CJB, 2020 WL 229993, at *6 (D. Del. Jan. 15, 2020). Here, the parties focus on a specific jurisdiction-type analysis, which (in the Rule 4(k)(2) context), asks whether: (1) the defendant purposefully directed its activities at residents of the United States, (2) the claim arises out of or relates to the defendant's activities with the United States, and (3) assertion of personal jurisdiction is reasonable and fair. *Synthes*, 563 F.3d at 1297-99. Plaintiff bears the burden to demonstrate that the first two of these elements have been satisfied; if it does, then the burden shifts to Defendant to show (as to the third element) the presence of some considerations that would render jurisdiction unreasonable. *M-I Drilling*, 890 F.3d at 1001-02.

With respect to the first element—whether NXP B.V. purposefully directed its activities at residents of the United States—"'it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the [United States], thus invoking the benefits and protections of its laws.'" *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1353 (Fed. Cir. 2017) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Here, the Shelhamer Declaration would seem to make this argument a difficult one for Plaintiff. The Shelhamer Declaration explains that NXP B.V. is not an operating company, in the sense that it does not make, market or physically sell products around the world, nor does it manage or direct the activities of any other NXP entity that may do so. (D.I. 17 at ¶ 3) It is instead a Dutch legal entity that has an ownership interest in various other

NXP-related legal entities. (*Id.*) It does, however, own title to certain assets, including intellectual property such as the nxp.com website. (*Id.*)

Despite this, Plaintiff argues that NXP B.V. *has* purposefully directed activities at the United States; in doing so, it focuses on NXP B.V's ownership of the nxp.com website. (D.I. 18 at 13) According to Plaintiff, NXP B.V. uses this website to create and disseminate promotional and marketing materials, instructional materials and videos, product manuals, software and technical materials, which all in turn encourage the sale and use of the accused products (e.g., "Smart Home" products and related NXP development kits, or "NXP kits"). (D.I. 18 at 13; *see also* D.I. 7 at ¶¶ 7, 25, 37) In other words, this website is alleged to induce end users to directly infringe the '276 patent. (D.I. 18 at 13; *see also* D.I. 7 at ¶ 37) And Plaintiff asserts that this website "has a page specifically dedicated to the U.S., which lists eleven U.S. locations" and that a "substantial portion of the consumers for the NXP kits and the users of [the website] are in the U.S., including Delaware." (D.I. 18 at 13 (citation omitted))[4]

In the Court's view, however, the due process analysis need not extend past this first "purposeful direction/availment" element. To that end, the Court concludes that NXP B.V.'s ownership of this website, standing alone, is insufficient to sufficiently demonstrate the requisite purposeful direction or availment. The record does not indicate that this website is anything other than a "passive" website that simply offers information to its users, whether they be in the United States or somewhere else around the world. *See Trintec Indus., Inc. v. Pedre*

---

[4] The nxp.com website, which is cited in Plaintiff's answering brief, (D.I. 18 at 13), appears to be a website of third party NXP N.V. *See About NXP*, http://nxp.com/company/our-company/about-nxp.com:ABOUT-NXP (last visited May 6, 2020). The Court takes as true Plaintiff's assertion that the website is owned by NXP N.V.'s wholly-owned subsidiary, Defendant NXP B.V., (D.I. 18, ex. 1 at ¶ 6); indeed, it is undisputed that NXP B.V. owns the website, (D.I. 17 at ¶ 3).

*Promotional Prods., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005); *Maynard v. Phila. Cervical Collar Co.*, 18 F. App'x 814, 816-17 (Fed. Cir. 2001).[5] And the Federal Circuit has repeatedly held that a defendant's ownership of a passive website, standing alone, does not suffice for purposeful availment of the forum—that is, it does not suffice to help a plaintiff meet the first element of the due process prong. *See 3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1380 (Fed. Cir. 1998) (concluding that the defendant's maintenance of its website, which although it was "viewable in [the forum state of] California," ultimately did not demonstrate that the defendant "directed [any] activity toward the residents of California" and thus was insufficient to establish purposeful availment); *Maynard*, 18 F. App'x at 816-17 ("[The defendant] simply created a general access web page to provide information. It did not contact users in Kentucky, did not allow users to enter into contractual agreements with the company, and did not target its advertisements toward residents of the forum state. A passive website is insufficient to establish purposeful availment for the purpose of due process."); *see also NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1378-79 (Fed. Cir. 2017) (concluding that defendant's website—which was "interactive" and not merely "passive"—nonetheless did not suffice for purposeful availment of the forum state of Kansas, and noting that "[s]omething more is needed—whether it be actual sales, targeted advertising, or contractual relationships—to connect

---

[5] *Cf. Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (*cited in Maynard*, 18 F. App'x at 816) (explaining that a "passive" website is one that "does nothing more than advertise on the Internet" while contrasting that with a website that allows a party to do "business over the Internet by entering into contracts with residents of other states which involve the knowing and repeated transmission of computer files over the Internet") (internal quotation marks and citation omitted).

the defendant's infringing acts of making, using, offering, or selling its product with the forum State").[6]

Plaintiff's contrary arguments are not persuasive.

For example, Plaintiff suggests that because the website in question is said to promote *induced* infringement under 35 U.S.C. § 271(b) instead of *direct* infringement under 35 U.S.C. § 271(a), this might make a difference in the purposeful direction/availment calculus. (D.I. 18 at 13-14) The Court does not see why. The Federal Circuit authorities cited above do not distinguish their analysis as to this element based on whether direct or indirect infringement is alleged. *See NexLearn, LLC*, 859 F.3d at 1373-74, 1378-79; *3D Sys., Inc*, 160 F.3d at 1375-76, 1380; *Maynard*, 18 F. App'x at 815-17. If a website that indicates a party is amenable to offering its products for sale to residents of a forum does not establish personal jurisdiction, *see NexLearn, LLC*, 859 F.3d at 1378-79 (citing cases), and if a website that promotes the sale of a product in that forum is also insufficient, *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1235 (Fed. Cir. 2010), the Court does not see why the result should be different if the website instead simply offers instructions about how to use an allegedly infringing product in the forum. In all cases, the content at issue on the website is similarly "passive."

---

[6] *Cf. Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1235 (Fed. Cir. 2010) (holding that the Federal Circuit "[could not] determine that [the defendant] *purposefully availed* itself of the privilege of conducting activities in California by some affirmative act or conduct, and that [the plaintiff's] claims arise out of those activities," even though the defendant maintained a website that "promote[d] the sale of [the infringing] products in California") (emphasis added); *Telcordia Techs, Inc. v. Alcatel S.A.*, Civil Action No. 04-874-GMS, 2005 WL 1268061, *7 (D. Del. May 27, 2005) ("[T]he mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant purposefully availed itself of conduct activity in the forum, knowingly interacting with residents of the forum state via its web site.") (internal quotation marks and citation omitted).

Next, Plaintiff suggests that somehow relevant to this inquiry is the fact that, pursuant to Section 271(b), the "inducement can be anywhere, so long as the underlying direct infringement takes place in the U.S." (D.I. 18 at 14 (citing *Merial Ltd.*, 681 F.3d at 1302-04))  It is true that in *Merial Ltd.*, the Federal Circuit confirmed that Section 271(b) does not foreclose liability for indirect infringement when the alleged infringer's acts of inducement occur exclusively outside of the United States (so long as the resulting act of direct infringement occurs in this country). 681 F.3d at 1302-03.  But the Court does not see what that holding (which relates to the concept of extraterritoriality, and whether a federal statute can permissibly reach a party's acts occurring outside of the United States) has to do with the instant analysis regarding purposeful direction or availment.  The latter is a separate inquiry, whose entire focus is on the quantity and quality of the defendant's *contacts with the forum*—all in order to determine whether that defendant can properly be subjected to a U.S. court's jurisdiction.  *Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1363 & n.10 (Fed. Cir. 2008) ("The personal jurisdiction requirement—which prevents federal courts from exercising authority over defendants without sufficient contacts with the United States[]—is an important limitation on the jurisdiction of the federal courts over purely extraterritorial activity that *is independent of* the extraterritorial reach of a federal statute[.]") (emphasis added).  So just because the content of a defendant's website could suffice to prove induced infringement, that does not mean that ownership of the website necessarily meets the minimum contacts test for personal jurisdiction.[7]

---

[7]   Similarly, the Court rejects Plaintiff's reliance on *Alcohol Monitoring Systems, Inc. v. Actsoft, Inc.*, 682 F. Supp. 2d 1237 (D. Colo. 2010), which Plaintiff relies on for the proposition that:

> [A] defendant purposely directs indirectly infringing activities at a state when the defendant knows that the direct infringement

11

Lastly, Plaintiff argues that "[t]he focal point of an injury from patent infringement is the location, or locations, at which the infringing activity directly impacts the interests of the patentee." (D.I. 18 at 15 (citing *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1377 (Fed. Cir. 2005)). In Plaintiff's view, this "injury" in the form of lost sales within the U.S. suffices for personal jurisdiction. (*See* D.I. 18 at 14-15) But the Supreme Court has clarified that "mere injury to a forum resident is not a sufficient connection to the forum. . . . [A]n injury is jurisdictionally relevant only insofar as it shows that *the defendant has formed a contact* with the forum State." *Walden v. Fiore*, 571 U.S. 277, 290 (2014) (emphasis added). Plaintiff's injury (to the extent it has lost sales in the United States to the allegedly infringing accused products) is not enough to establish personal jurisdiction over this Defendant here.

## IV.   CONCLUSION

For the foregoing reasons, the Court recommends that Defendant's Motion be GRANTED. It further recommends that dismissal be with prejudice.[8]

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

---

occurred in that forum and has some role in inducing or producing the combination of components that constitute such infringement.

*Id.* at 1246 (cited in D.I. 18 at 15) There, the *Alcohol Monitoring Systems* court found that personal jurisdiction lay over a foreign defendant who was allegedly inducing infringement; the foreign defendant satisfied the purposeful direction/availment prong because, at a minimum, it was using another company "as the sole distribution channel for its product" and it knew that entity to be specifically targeting companies located in the forum state of Colorado as part of a marketing campaign for sale of accused products. *Id.* at 1241, 1247. Here, in contrast, Plaintiff does not allege such facts about Defendant. All we know here is that NXP B.V. owns a website that is viewable by United States residents and that allegedly contains content that, when read or viewed, encourages infringement of Plaintiff's patent.

[8]     Plaintiff does not request jurisdictional discovery, nor does it argue how any discovery could lead to additional facts that could support the exercise of jurisdiction.

Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  Fed. R. Civ. P. 72(b)(2).  The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated:  May 7, 2020

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE